{¶ 63} Although I concur in the majority's disposition of the second assignment of error, I must dissent from the majority's decision to reverse the grant of summary judgment as to Grange Mutual Casualty Company.
 {¶ 64} The majority's decision paradoxically affirms the grant of summary judgment in favor of the insureds, the Chapeks, but reverses as to the insurer, Grange, and remands the case for further proceedings. Grange's liability under the policy is wholly derivative of the Chapeks' liability for negligence. Since the Chapeks are found not to have been negligent, the issue of Grange's liability under the policy is rendered moot and need not have been considered by the majority.
 {¶ 65} The majority, nevertheless, considers Grange's liability, and incorrectly concludes that the Havels "have coverage and Grange has an absolute duty to defend."[5]
 {¶ 66} Assuming, arguendo, that the Chapeks were negligent, coverage under the Grange policy would be precluded by the policy's exclusion for "[b]odily injury * * * arising out of * * * physical abuse."[6] The majority holds that this exclusion "only applies to an insured who actually commits an intentional act." The majority's interpretation ignores the plain language of the exclusion, which does not even refer to insureds. The exclusion applies to "bodily injury * * * arising out of * * * physical abuse" regardless of whether that "bodily injury" is intentionally or negligently inflicted. The focus of the exclusion is the source of the injury, not the intent of the tortfeasor. There is nothing in the language of the policy that would limit the application of the exclusion to intentional acts.
 {¶ 67} Nor is there anything in the Doe decision that would invalidate an exclusion for "bodily injury arising out of physical abuse."Doe stands for the proposition that "Ohio public policy permits a party to obtain liability insurance coverage for negligence related to sexual molestation when that party has not committed the act of sexual molestation." Doe v. Shaffer, 90 Ohio St.3d 388, 2000-Ohio-186, at syllabus. The Supreme Court did not interpret the specific language of the insured's policy in Doe. Rather, the court addressed whether Ohio public policy precluded coverage for negligence based on underlying intentional conduct. Cf. Allstate Ins. Co. v. Dolman, 6th Dist. Nos. L-05-1281 and L-05-1290, 2006-Ohio-4134, at ¶ 24 ("[Doe] found that a non-molester may be insured for acts of negligence that facilitate sexual molestation by another insured under the same policy, not that they must be insured") (emphasis sic).
 {¶ 68} For the foregoing reasons, summary judgment was properly granted in Grange's favor.[7]
[5] Contrary to the majority's characterization, the present action is not a declaratory judgment action between the Chapeks and Grange concerning the availability of coverage and/or the duty to defend under the policy.
[6] The term "abuse" has the ordinary and commonly accepted meaning of "maltreatment" when used as a noun and "to damage or injure" when used as a verb. Cf. Black's Law Dictionary (8th Ed.2004) 10 ("physical or mental maltreatment"); The New Shorter Oxford English Dictionary (1993) 10 ("injury, maltreatment"). The murder of Jessica Havel by a combination of beating, stabbing, and strangulation unquestionably constitutes "physical abuse" as that term is used in the Grange policy.
[7] As regards the exclusion for "[b]odily injury * * * expected or intended by any insured person," Jeremy Chapek, as a resident of the household at the time of Jessica's murder, technically constitutes "any insured person" for the purpose of this exclusion. Arguably, then, this exclusion is also applicable in the present case. See, e.g., Bocook v.Sandy Beaver Valley Farmers Mut. Ins. Co., 4th App. No. 02CA4, 2002-Ohio-6307, at ¶ 12. The fact that Jeremy is an insured under the Grange policy also distinguishes the present case from Doe, where it was undisputed that none of the molesters were insureds under the Interstate policies. 90 Ohio St.3d at 394.